UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10-CR-253 CEJ |
| ) | |
| JAMAAL CURRY JOHNSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters in this case to United States Magistrate Judge Frederick R. Buckles for determination and recommended disposition, where appropriate. On December 15, 2011, Judge Buckles filed a Memorandum, Report and Recommendation with respect to the motions filed by defendant Jamaal Curry Johnson to suppress evidence, identification, and statements. The defendant filed timely objections to the magistrate judge's recommendation that his suppression motions be denied. The United States did not file a response to the defendant's objections.

Pursuant to 28 U.S.C. § 636(b)(1), the Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." In order to make the required determination, the Court has reviewed the transcripts of the evidentiary hearings and the exhibits received into evidence. Having done so, the Court concludes that

the factual findings made by Judge Buckles are supported by the evidence, and that his legal conclusions are correct.

### I. Suppression of Evidence

**Events of February 2, 2001**: The vehicle in which defendant was a passenger was searched by the police with the permission of the driver who had apparent authority to consent to the search. See United States v. Matlock, 415 U.S. 164, 171 (1974). While seated in the car, the defendant appeared to be holding an object in his hand and he was seen moving his hand to the area between the seat and the door. Thereafter, the police discovered marijuana in the door pocket next to the seat where the defendant had been sitting. Based on the totality of the circumstances, there was probable cause to arrest the defendant without a warrant. See United States v. Watson, 423 U.S. 411, 417 (1976). The search of the defendant's person was permissible as incident to the valid arrest. United States v. Robinson, 414 U.S. 218, 235 (1973).

**Events of April 10-11, 2001**: "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area [or item] searched." United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). Although the defendant was present at the time the police entered the residence at 4356 Maffitt, there is no evidence that he owned or resided in the premises or that he was anything more than a "casual visitor." United States v. Nabors, 761 F.2d 465, 468-69 (8th Cir. 1985) [*citing* Rakas v. Illinois, 439 U.S. 128, 142 (1978) and United

States v. Perez, 700 F.2d 1232, 1236 (8th Cir. 1983)]. The defendant has not demonstrated that he had a reasonable expectation of privacy and, therefore, he does not have standing to challenge the lawfulness of the search of the residence.

Regardless of whether the police were lawfully on the premises, the arrest of the defendant was based on probable cause, as he was observed to be in possession of marijuana. The seizure of evidence from him was lawful as a search incident to the arrest.

**Events of September 5, 2001**: Testimony presented at the suppression hearing established that the defendant was stopped by the police after they saw him drop an object on the ground. The defendant's actions coupled with the experience and training of the police officers gave rise to reasonable suspicion of criminal activity which justified further investigation. See Terry v. Ohio, 392 U.S. 1, 22-24 (1968). The defendant abandoned the object by throwing it on the ground, and the police were permitted to seize it without a warrant. See United States v. Simpson, 439 F.3d 490, 494 (8th Cir. 2006). Because the dropped object appeared to be cocaine base, there was probable cause to arrest the defendant. The evidence fails to establish that the defendant was "seized" before he dropped the object.

**Events of October 6, 2001:** The evidence established that the defendant was stopped for driving a car at night without illuminated headlights and taillights. Even a minor traffic violation can provide probable cause for a traffic stop. See United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993). The defendant's assertion that the traffic stop was pretextual has no evidentiary support in the record. In any case, "[i]f the officer is legally authorized to stop the driver, any

additional 'underlying intent or motivation' does not invalidate the stop." United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994), *quoting*, United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990), *cert. denied*, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 and 449 (1991). Once the officer determined that defendant did not have a valid driver's license, he was authorized by state law to arrest the defendant. Having made a valid arrest, the police were permitted to search the defendant. Under the "plain view" doctrine, the police were permitted to seize the evidence that fell out of the defendant's shoe. United States v. Varner, 481 F.3d 569, 572 (8th Cir. 2007).

**Events of August 9, 2002**: The defendant does not object to the magistrate judge's findings of fact with respect to this incident. However, in a post-hearing memorandum the defendant asserts that "it was highly unlikely" that the police officer/witness could have seen the actions he testified about. There is nothing in the record indicating that the officer's view was obstructed or that his vision was impaired. Thus, there is no factual basis for the defendant's challenge to the officer's credibility.

**Events of February 16, 2004**: The testimony established that the defendant's arrest occurred after the police observed him commit an ordinance violation. The defendant does not dispute this testimony, and there is no support for his assertion that the stated reason for the arrest was pretextual.

**Events of February 20, 2004**: The testimony established that a police officer seized a plastic bag that he saw the defendant drop on the ground in front of the apartment building. Because the bag contained what appeared to be marijuana,

there was probable cause for the defendant's arrest. The defendant contends that he was "seized" when the police initially approached him, before the suspected marijuana was found. Although the police did not see the defendant engage in any suspected drug transactions, they did see other individuals standing with him do so. Thus, the police were justified in approaching the group to investigate further. Also, there is no evidence that the police had their weapons drawn or that they "stormed" the apartment building. Further, the fact that the defendant walked away when the police approached is inconsistent with his claim that he did not feel free to leave. See California v. Hodari D., 499 U.S. 621, 624-26 (1991); United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994).

**Events of June 30, 2004**: In his initial encounter with the police, the defendant was simply asked what he was doing. This was entirely consensual and there was no seizure at that point. Once the defendant removed the bag that appeared to contain marijuana from his pocket and threw it into the car, the police had reasonable suspicion that the defendant was committing a crime. The investigative detention of the defendant at that point was justified. The defendant voluntarily relinquished possession of the bag by tossing it into the car. Because the bag was abandoned, its seizure did not violate the Fourth Amendment.

**Events of July 14, 2008**: The testimony established that the police initially approached the defendant to ask him some questions. By doing so, the police did not violate the Fourth Amendment. After the defendant deliberately dropped the bag containing what appeared to be crack cocaine, the police were

permitted to seize it without a warrant. At that point, there was probable cause to effect the defendant's arrest.

**Events of September 5, 2008**: The evidence established that the police pursued a vehicle whose occupants had been involved in a shooting. The defendant matched the description of the individuals seen running from the vehicle after it crashed during the pursuit. The arresting officer, David Calcaterra, saw the defendant being chased by another officer approximately one block from where the vehicle crashed. Additionally, Officer Calcaterra was listening to the police radio broadcast of the pursuit of the suspects. Given the totality of the circumstances, there was probable cause for the defendant's arrest.

After making a lawful arrest, the police were permitted to conduct a search of the defendant. The seizure of the cell phone and other evidence found on the defendant's person did not violate the Fourth Amendment.

The Court has reviewed the affidavit in support of the search warrant application and finds that it contains facts establishing probable cause to search the contents of the defendant's cell phone. The affidavit recited the circumstances of the shooting incident and the subsequent chase by the police. It also described the flight of the vehicle's occupants, evidence found in the vehicle that was linked to other crimes, the defendant's criminal history, and the affiant's experience and training as a special agent of the Bureau of Alcohol, Tobacco and Firearms. Based on the information set forth in the affidavit, there was a "fair probability" that information leading to the identification of the other occupants of the vehicle and information

about other criminal activity could be found through a search of the cell phone. Illinois v. Gates, 462 U.S. 213, 238 (1983).

The defendant's assertion that the affidavit contained information derived from an illegal search is without merit. As discussed above, the cell phone was found during a search incident to the defendant's lawful arrest.

II. **Suppression of Statements**

**Events of March 2005**: The defendant asserts that the magistrate judge erred in concluding that he was not in custody during the pre-parole interview that was conducted while he was in prison. The record, however, supports that conclusion. Although the defendant was told to go to the interviewer's office, the interview itself was voluntary. The undisputed testimony of the interviewer, Helen Trippensee, established that inmates, like the defendant, could choose not to seek a parole hearing or to participate in the pre-parole interview. Also, the mere fact that the defendant was in prison does not mean that the interview was custodial in nature. Leviston v. Black, 843 F.2d 302, 304 (8th Cir. 1988). As the magistrate judge accurately noted, the interview was non-adversarial and it was not conducted under circumstances that would lead a reasonable person to feel that he was not free to leave. There is no evidence that the defendant's will was overborne or that he was compelled in any way to participate in the interview. There is no evidence to support the defendant's contention that he felt compelled to submit to the interview or that he did not feel free to leave. Because the defendant was not in custody, there was no requirement that the Miranda warnings be given to him prior to the interview. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

**Events of September 5, 2008**: After placing the defendant under arrest and before any questioning, Officer Calcaterra advised the defendant of his rights to remain silent and to an attorney. Id. The defendant stated that he understood his rights and that he did not want to talk to the police. The next day, while he was in jail, the defendant was approached by two different police officers. He was again given the Miranda warnings, and this time he agreed to answer questions. A second interview was conducted one or two days later. After first being given the Miranda warnings, the defendant agreed to answer questions.

It is undisputed that the defendant understood his rights to remain silent and to counsel and that he voluntarily waived them. The defendant objects only to the magistrate judge's conclusion that the police did not violate the Fifth Amendment by questioning defendant after he'd invoked his right to remain silent. The Court agrees with the magistrate judge's analysis of the circumstances of this case in light of the factors set forth in Michigan v. Mosley, 423 U.S. 96, 104 (1975). A significant length of time passed between the defendant's invocation of his right to remain silent on September 5 and the interview on September 6. Also, the Miranda warnings were given prior to each interview. Further, there is no evidence that the police threatened the defendant or engaged in any conduct to overcome his will or wear down his resistence. Thus, the statements will not be suppressed.

III. **Suppression of Identification**

The Court has examined the photographs used in the arrays and the photographs of the lineups that were presented to three witnesses---Kesha Johnson,

Travis Deal, and Joseph Middendorf. Each witness made an out-of-court identification of the defendant.

Due process requires the exclusion of identification evidence that is obtained through unduly suggestive procedures when the identification lacks reliability. Manson v. Brathwaite, 432 U.S. 98, 114 (1977)("reliability is the linchpin in determining the admissibility of identification testimony"). In this case, the magistrate judge properly considered the factors appropriate to determining the reliability of the witnesses' out-of-court identification of the defendant, *i.e.*: (1) the witness's opportunity to view the defendant, (2) the witness's degree of attention, (3) the accuracy of the description given by the witness prior to the identification, (4) the witness's level of certainty with respect to his identification of the defendant, and (5) the length of time between the crime and the identification. Id. at 116. The Court finds that the photo arrays and the lineups were not suggestive. Further, the Court agrees with the magistrate judge that the witnesses' prior familiarity with the defendant, their degree of attention to and detailed descriptions of the two shooting events, the environment in which they saw the defendant, and their degree of certainty support the conclusion that the identifications are reliable.

With respect to the lineup conducted on February 9, 2006, the defendant was not entitled to counsel. This is because no adversarial judicial proceedings arising from the incident for which the lineup was being conducted had been initiated against him at that time. See Kirby v. Illinois, 406 U.S. 682, 688-90 (1992); United States v. Powell, 853 F.2d 601, 604 (8th Cir. 1988).

Finally, there was no out-of-court identification made by witnesses Gloria Johnson, Tamika Johnson and Ali Goodwin. The defendant will have the opportunity to cross-examine these witnesses and challenge their credibility at trial. However, there is no basis for suppressing their testimony.

* * * * *

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Memorandum, Report and Recommendation of United States Magistrate Frederick R. Buckles [Doc. # 137] is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the motions of defendant Jamaal Curry Johnson to suppress statements and evidence [Doc. # 43] and to suppress identification testimony [Doc. # 49] are **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2012.